```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>v.<br><br>CHRISTOBAL ALEJANDRO LOPATEGUI-PAOLI,<br><br>**Defendant.** | CRIMINAL NO. 22-515 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is defendant Christobal Alejandro Lopategui-Paoli's *Motion to Set Aside Magistrate Judge's Detention Order and/or Request for De Novo Hearing* ("*Motion*"). (Docket No. 29). For the reasons set forth below, the Court **DENIES** defendant's *Motion*. Mr. Lopategui shall remain detained pending trial.

### I.   BACKGROUND

On December 1, 2022, a Grand Jury indicted Mr. Lopategui on five counts:

- Possession of a Machine Gun in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(B)(ii) (Count 1);

- Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2);

Case 3:22-cr-00515-RAM   Document 39   Filed 05/15/23   Page 2 of 12

Criminal No. 22-515 (RAM)                                              2

- Illegal Possession of a Machine Gun in violation of 18 U.S.C. § 922(o) (Count 3);

- Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1) (Counts 4 and 5);

(Docket No. 11). Defendant was purportedly caught with three firearms and a cornucopia of illegal drugs and drug distribution paraphernalia in his vehicle.

On December 8, 2022, the U.S. Probation Office submitted defendant's most recent pretrial services report, which recommended detention pending trial. (Docket No. 16). On December 28, Magistrate Judge Bruce McGiverin ordered defendant be detained pending trial, finding that he had not rebutted the presumptions in favor of detention present in his case. (Docket No. 19). The Magistrate Judge concluded that the Government proved by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. Id. at 2. The Court's reasons for detention included:

1. The strong weight of the evidence against defendant;

2. The fact that defendant would be subject to a lengthy period of incarceration if convicted;

3. His prior criminal history, including a prior arrest for weapons; and

4. The nature of the charged offenses;

Id. at 2-3.

On April 10, 2023, defendant filed the present *Motion* seeking *de novo* review of his detention order. (Docket No. 29). The Government filed an opposition on April 16. (Docket No. 32). This Court held the *de novo* detention hearing on April 28. (Docket No. 35). The Government proceeded by proffer and argued that defendant should remain in custody pending trial based on serious risk of flight and danger to the community. Defendant argued that he did not pose a risk of either.

After considering the evidence and defendant's proposed bail package, the Court finds that the Government has proven under the relevant standards of proof that there are no conditions of release which can reasonably assure the safety of any person and the community and defendant's appearance as required. Therefore, Mr. Lopategui shall remain detained pending trial. Nothing in this *Opinion and Order* should be read as affecting defendant's presumption of innocence. *See* 18 U.S.C. § 3142(j).

## II.  LEGAL STANDARD

### A. Standard of review for a detention or release order

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary

hearing" when "the defendant has placed relevant facts at issue." Id.

### B. **The Bail Reform Act**

Pursuant to the Bail Reform Act of 1984 (the "Act"), a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

#### 1. Standard of proof

The standard of proof for detention on the grounds of dangerousness is **clear and convincing evidence**. Id. § 3142(f). Clear and convincing evidence is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984) (citations omitted). This standard requires "a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. On the other hand, the standard of proof for detention on the grounds of risk of flight is preponderance of the evidence. *See* United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

**2. Factors the Court must consider**

18 U.S.C. § 3142(g) sets forth the factors judicial officers must consider when determining whether there are conditions of release that assure a defendant's appearance and the safety of the community. These factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

**3. The 18 U.S.C. § 3142(e) presumption**

18 U.S.C. § 3142(e) creates a rebuttable presumption that no conditions can reasonably assure the appearance of the defendant and the safety of the community where there is probable cause that a defendant has committed one of the crimes listed in the statute or in the other circumstances set forth therein. *See* United States v. Vargas-Reyes, 220 F. Supp. 3d 221, 225 (D.P.R. 2016) (citing 18 U.S.C. § 3142(e)(3)). Here, there is a rebuttable presumption created by defendant's alleged drugs and firearms offenses. *See* 18 U.S.C. § 3142(e)(3)(A)-(B). A grand jury indictment alone suffices to trigger the presumption. Id. (citing, *inter alia*, United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986)).

In the case of drug trafficking crimes, the presumption comes from "Congress's findings that drug traffickers often have the

resources and foreign contacts to escape to other countries" and that "[f]orfeiture of even a large bond may be just a cost of doing business, . . . hence drug traffickers pose special flight risks." United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987). *See also* United States v. Jessup, 757 F.2d 378, 385 (1st Cir. 1985), *partially abrogated on other grounds by* United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990); United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988); United States v. Dillon, 938 F.2d 1412, 1416-17 (1st Cir. 1991).

Once triggered, the 18 U.S.C. § 3142(e)(3) presumption imposes on the defendant a burden of production. *See* Vargas-Reyes, 220 F. Supp. at 225. The defendant may satisfy this burden of production by introducing at least some evidence contrary to the facts presumed. Id. For that reason, "[t]he burden is not heavy." Id. Notably, the burden of persuasion always rests with the Government in both presumption and non-presumption cases. Id.

However, the 18 U.S.C. § 3142(e)(3) presumption does not simply vanish once a defendant has produced some evidence. *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383-84, 387. Instead, judges must keep the presumption in mind as an additional factor to the four listed in Section 3142(g). *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383-84, 387. In drug trafficking cases, the weight afforded to the presumption depends on how closely the defendant resembles the paradigmatic drug

trafficker for whom the risk of flight is particularly high; "the less those features resemble the congressional paradigm, the less weight the [court] will likely give to Congress's concern for flight." Jessup, 757 F.2d at 387. *See also* Palmer-Contreras, 835 F.2d at 18; Perez-Franco, 839 F.2d at 870.

### III. DISCUSSION

#### A. The nature and circumstances of the offense charged

Mr. Lopategui was indicted on five serious counts of drug trafficking and possession of illegal firearms offenses. (Docket No. 11). If convicted, he faces a mandatory minimum sentence of 35 years. This creates a strong incentive to flee. *See* United States v. Morla-Cabrera, 2021 WL 2658094, at *5 (D.P.R. 2021) (citing United States v. Hussain, 6 F. App'x 50, 52 (1st Cir. 2001)). Given the severity of the alleged offenses and the punishment prescribed by the relevant statutes, this factor favors detention.

#### B. The weight of the evidence against defendant

The second relevant factor -- the weight of the evidence against a defendant -- also weighs in favor of detention. Mr. Lopategui was purportedly caught with the contraband while speeding down a highway. He was the only person in the car, making it difficult for him to argue that the contraband was not his. He was allegedly caught with two semiautomatic pistols, one machine gun loaded with a high-capacity magazine full of 25 bullets, and six magazines. He was also said to have a variety of illicit drugs

that appeared to be packaged and ready for distribution. These included marijuana, cocaine (over 500 grams), Alprazolam (Xanax), Oxycodone, and methamphetamine (over five grams). He also supposedly had drug paraphernalia that strongly suggests that he was involved with the distribution of controlled substances, such as a vacuum sealer, plastic wraps, plastic baggies (some already filled), two digital scales, and a bag full of empty or partially filled prescription pill bottles with the labels ripped off. The authorities also purportedly found Lidocaine powder, which is commonly used to make drugs more voluminous for sale. The Government also alleges that defendant's phone has two incriminating videos -- one showing a Glock firearm with an extended magazine and one showing an AK47 style assault rifle with a banana clip.

While defendant's counsel hinted at a possible evidentiary issue that would be grounds for suppression, there is no suppression motion before this Court at this time. Thus, the Court will not consider this unsubstantiated allegation in ruling on the present *Motion* for *de novo* bail review.

C. **Defendant's personal history and characteristics**

There are some aspects of defendant's personal history and characteristics that favor release, but others that tip the scales in favor of detention.

Mr. Lopategui does not have any reported mental health conditions or history of drug or alcohol abuse, though he did report using marijuana for a short period of time when he was 18. Nonetheless, these factors would favor release.

Defendant's life and family are indeed centered in Puerto Rico. He does not appear to have any family or business connections abroad. He has, however, travelled internationally to countries such as Spain, Argentina, Costa Rica, Mexico, Canada, and China. (Docket No. 16 at 2). While these trips were purportedly for leisure, they do suggest defendant may have the means for international travel.

Defendant claims to have an excellent reputation as a law-abiding citizen and respect for law enforcement, but his criminal record says otherwise. In 2014, defendant was charged with violating the Puerto Rico Controlled Substances Law, Carrying and Use of Firearms Without License, Aggravated Escalation, Aggravated Illegal Appropriation, and Aggravated Damage. (Docket No. 16 at 4-5). *See also* United States v. Rodriguez, 950 F.2d 85, 88-89 (2d Cir. 1991) (noting that courts may consider uncharged conduct in assessing a defendant's dangerousness). He was found guilty in 2017 of the Controlled Substances violation and ordered to pay a $1,000 fine. (Docket No. 16 at 4-5). Defendant thus snubbed his nose at the chance at redemption afforded to him by the disposition

of those previous charges and eroded this Court's trust in his ability to comply with bail conditions, which favors detention.

Furthermore, Mr. Lopategui fits the paradigmatic drug trafficker that Congress had in mind when it crafted the 18 U.S.C. § 3142(e)(3) presumption against release. Despite claiming otherwise, the amount and variety of drugs, drug distribution paraphernalia, and illegal firearms found on Mr. Lopategui, one of which was a loaded machine gun, suggests links to drug trafficking organizations.

Mr. Lopategui unsuccessfully attempts to compare himself to the defendant in United States v. Giampa, who the district court released pending trial. *See* 755 F. Supp. 665 (W.D. Pa. 1990), *aff'd*, 947 F.2d 938 (3d Cir. 1991). However, Mr. Giampa was caught after accepting one kilogram of cocaine **on consignment** from the informant who had called him and offered it to him **because he could not afford to pay the informant at the time**. *See* id. at 669. He also had no criminal record. *See* id. The district court thus found that Mr. Giampa was not like the paradigmatic drug trafficker with the connections necessary to flee with which Congress was concerned. *See* id. Mr. Lopategui's circumstances suggest that he, on the other hand, is.

Defendant alludes to a difficult upbringing without explaining how these circumstances would affect his level of flight risk or danger to the community. As these are the only two relevant

factors in deciding on a motion for *de novo* bail review, the Court disregards these arguments.

### D. **The nature and seriousness of the danger to any person or the community that would be posed by defendant's release**

The fourth and final factor also weighs in favor of detention. Drug and gun violence are a serious issue in Puerto Rico, and Mr. Lopategui's criminal history indicates a lack of deterrence to continue engaging in such unlawful acts. Defendant's ability to continue to introduce drugs into the community if released also presents a danger to others. *See* United States v. Pina-Aboite, 97 Fed. Appx. 832, 836 (10th Cir. 2004) (citation omitted) ("[T]he risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community."); United States v. Hernandez, 778 F. Supp. 2d 1211, 1230 (D.N.M. 2011). *See also* United States v. Tortora, 922 F.2d 880, 886-87 (1st Cir. 1990) ("electronic monitoring . . . cannot be expected to prevent a defendant from committing crimes or deter him from participating in felonious activity within the monitoring radius").

Mr. Lopategui hopes to be released pending trial to take care of his sick mother, but this is not a factor that courts consider unless it affects a defendant's flight risk or level of dangerousness. In this case, his mother's ailments give this Court pause that she could serve as an effective Third-Party Custodian for defendant, however well-intentioned she may be.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Lopategui's *Motion* is **DENIED**. Defendant shall remain detained pending trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of May 2023.

                                   S/ RAÚL M. ARIAS-MARXUACH
                                   United States District Judge